[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 40.]

DEROLPH ET AL., APPELLEES, *v*. THE STATE OF OHIO ET AL., APPELLANTS.

[Cite as *DeRolph v. State*, 2001-Ohio-5092.]

*Constitutional law—Education—School funding—Attorney General's request for clarification of Supreme Court's November 16, 2001 order and request for a status conference denied.*

(No. 99-570—Submitted November 26, 2001—Decided December 13, 2001.)

_____

**MOYER, C.J.**

**{¶ 1}** On November 16, 2001, this court entered an order referring the instant cause to a settlement conference to be presided over by a master commissioner. 93 Ohio St.3d 628, 758 N.E.2d 1113. We reviewed the record and identified, for purposes of S.Ct.Prac.R. XIV(6), the parties and counsel we deemed to be appropriate participants in mediation.

**{¶ 2}** In addition, the court identified nine mediators of national reputation as candidates for appointment as master commissioner and invited the parties to submit to the court comments on, or challenges for cause to, any of the candidates.

**{¶ 3}** On November 26, defendants-appellants, the state of Ohio, the Ohio Board of Education, the Ohio Superintendent of Public Instruction, and the Ohio Department of Education (collectively, "the state") filed a memorandum in response to the order. The Attorney General, as legal counsel for the state, requested clarification of the November 16 order and a status conference at which both procedural and substantive issues relating to the initiation and progress of the ordered mediation could be discussed.

**{¶ 4}** On the same day, plaintiffs-appellees, joined by counsel for members of the minority party of the General Assembly, filed a memorandum providing helpful comment regarding candidates named in the November 16 order, which they

described as a " 'blue ribbon panel.' " They have not, however, filed a response to the state's requests for clarification and for a status conference.

{¶ 5} The state's characterization of its request as one for clarification is euphemistic—the state clearly takes issue with the substance of this court's order rather than with any alleged ambiguity. Having requested, and been granted, reconsideration of our decision on the merits in *DeRolph v. State* (2001), 93 Ohio St.3d 309, 754 N.E.2d 1184 ("*DeRolph III*"), the state now takes issue with the court's designation of the counsel who will participate in the mediation ordered upon reconsideration.

{¶ 6} The state's dissatisfaction with our November 16 order is based on three arguments. It first asserts that "only the Attorney General can represent the state" and contends that no counsel other than Assistant Attorneys General or appointed special counsel should be permitted to participate in the mediation on behalf of any entity of the state and specifically on behalf of the Governor and members of the General Assembly. The state thereby challenges this court's initial identification of the counsel to participate in the mediation.

{¶ 7} Second, the state contends that "including amici counsel in the mediation inappropriately elevates the amici to party status." The state thereby challenges this court's identification of parties to be included in the mediation.

{¶ 8} Third, the state contends that "[t]he General Assembly cannot negotiate against itself" or "be bifurcated and represented on both sides of the negotiating table." The state thereby challenges the court's inclusion in the mediation of members of the minority party.

{¶ 9} We reject these contentions.

I

The State Has Waived Any Objection to the Appearance of Counsel for the
Governor, the President of the Senate, the Speaker of the House, and
Representatives of the Minority Caucus As Identified in the Record

{¶ 10} The state draws our attention to three provisions of the Revised Code. R.C. 109.02 provides, "The attorney general is the chief law officer for the state and all its departments * * *. [With certain exceptions], no state officer * * * or head of [an] * * * institution of the state shall employ, or be represented by, other counsel or attorneys at law." R.C. 109.03 authorizes the Attorney General to appoint Assistant Attorneys General. R.C. 109.07 authorizes the Attorney General to appoint special counsel to represent the state in civil actions in which the state is a party or directly interested.

{¶ 11} We acknowledge the import of these statutory provisions. What is surprising, however, is that the Attorney General in her November 26 response acknowledges that the counsel who have represented two Governors and four leaders of the houses of the General Assembly over the course of this appeal were not appointed special counsel pursuant to this statutory authority. She had not, however, objected before November 26 to the representation of any elected official as an *amicus curiae* by private counsel or rebutted the inference that the counsel had been appointed special counsel.

{¶ 12} When we initially identified counsel for the participants in our order of November 16, this court did no more than examine the record and incorporate the designations of attorney-client relationships as they have appeared since this appeal was filed in this court in 1995. For six years, neither the Attorney General nor anyone else objected to those designations.

{¶ 13} Moreover, the Attorney General has accepted the benefits inherent in the separate appearances of, and filing of separate *amicus curiae* briefs in support of the state's position by, two Governors and the leaders of the majority party. The time

has now passed for the Attorney General to object, and we find that the state has waived its right to challenge the separate appearance of the officials identified in our order of November 16 or their representation by separate counsel.

{¶ 14} Of course, nothing precludes the Governor, or any of the legislators who have appeared with the designation of *amicus curiae*, from now choosing the Attorney General rather than private counsel to represent them, assuming that such representation does not create a conflict of interest. But the *amicus* briefs filed by the Governor, the Speaker of the House of Representatives, and the President of the Senate vary dramatically from the briefs filed by certain minority party members of the General Assembly: while the minority members support the plaintiffs-appellees' position, the other state officials support the position of defendants-appellants. The Attorney General simply cannot represent both sides at the same time during mediation without placing herself in an unacceptable position of conflict of interest. To avoid such a conflict, she could, as she has in the past, appoint special counsel pursuant to R.C. 109.07.[1]

{¶ 15} The Attorney General also argues that the Governor and the members of the General Assembly who have filed *amicus* briefs are appearing as individuals rather than in their official capacities. The briefs refute that contention. In *DeRolph v. State* (1997), 78 Ohio St.3d 193, 677 N.E.2d 733 ("*DeRolph I*"), then Governor Voinovich filed an *amicus* brief in which he represented himself as appearing in his capacity as "the state's chief executive officer responsible for preparing and proposing to the legislature the biennial budget bill." Similarly, Governor Taft filed an *amicus* brief in *DeRolph III*, 93 Ohio St.3d 309, 754 N.E.2d 1184, in which he described his initiatives as Governor, in collaboration with the General Assembly, to reform assessment, academic standards, and accountability and to improve school facilities.

---

1. On November 7, 1995, the Attorney General filed notice in this court of the appointment of special counsel for a codefendant, the Ohio Board of Education, although the Attorney General now claims that she represents all four named defendants, including the Ohio Board of Education.

**{¶ 16}** In addition, then President of the Ohio Senate Stanley J. Aronoff and then Speaker of the Ohio House of Representatives Jo Ann Davidson filed a joint *amicus* brief in *DeRolph I*, 78 Ohio St.3d 193, 677 N.E.2d 733. In that brief, President Aronoff and Speaker Davidson emphasized that they "and the Ohio General Assembly ha[d] made a strong fiscal commitment to public education and equity in funding during the past 15 years." More recently, in their official capacities as President of the Ohio Senate and Speaker of the Ohio House of Representatives, respectively, Richard H. Finan and Larry Householder have submitted a similar brief in *DeRolph III.*

**{¶ 17}** Finally, members of the minority party of the Ohio Senate and House of Representatives filed an *amicus* brief through counsel Ben Espy in *DeRolph I*, stating that their reason for filing was to make clear that the brief filed by then president Aronoff and then Speaker Davidson "did not state the position of these Amici, the Ohio Senate, or the Ohio House of Representatives." Members of the minority party in the Ohio House of Representatives and Senate had also filed an *amicus* brief in *DeRolph III*. That brief clarified their position that "the State's brief and the briefs of Amicus Curiae for the State *do not* state the position of these Amici as they argue that the General Assembly has complied with the mandates of the Ohio Constitution and this Court." (Emphasis *sic*.)

**{¶ 18}** In short, Governors Voinovich and Taft, Presidents of the Ohio Senate Aronoff and Finan, Speakers of the Ohio House of Representatives Davidson and Householder, and selected members of the Ohio General Assembly have filed *amicus* briefs throughout the litigation of *DeRolph v. State* and have overtly done so in their official capacities rather than as individual citizens of the state of Ohio.

**{¶ 19}** The Attorney General has failed to timely object to numerous elected officials' appearing as *amici* in their official capacities, but now objects to including at the mediation the counsel who have represented the interests of their clients

throughout the litigation. In view of our firm belief that ultimate success of the mediation we have ordered is dependent upon full representation of interests at the mediation table, see discussion below at section II, we find no reason to order a change of legal counsel of the members of the minority party identified in our November 16 order. We perceive no reason, however, why Governor Taft and the members of the General Assembly identified in that order should be precluded from asking the Attorney General to represent them or to invoke R.C. 109.07 and appoint special counsel for them, should they so desire. Should such a change in representation occur, the court should be promptly notified of the substitution.

## II

### A Court-Ordered Settlement Conference Pursuant to S.Ct.Prac.R. XIV(6) Is a Separate and Independent Alternate Dispute Resolution Mechanism: It is Not Litigation

{¶ 20} Each aspect of our order of November 16 was motivated solely by our desire to create an opportunity for the interested parties to achieve a full, final, and lasting resolution of this long-lived litigation. Experience has demonstrated that a satisfactory result is fostered in public-policy mediations—as contrasted with private dispute mediations involving individuals—by including representatives expressing the full range of competing interests.

{¶ 21} The state acknowledges as "constitutionally true" that "any settlement on behalf of the State of Ohio must involve both the Governor and the General Assembly." It contends, however, that the inclusion of members of the General Assembly who have appeared as *amici* will impede mediation and implies that their inclusion reduces the chance that mediation will succeed.

{¶ 22} We disagree. Mediation is not litigation. It is appropriate that the Governor, the President of the Senate, the Speaker of the House, and a representative of the minority party all participate in mediation.

6

**{¶ 23}** One of the four defendants named in this litigation is "the State of Ohio." Clearly, for purposes of this case, the defendant "state of Ohio" includes the General Assembly. In our November 16 order, we noted that the plaintiffs-appellees in their first amended complaint alleged that " 'Defendant State of Ohio, *through the Ohio General Assembly*, is required to provide for a system of public education in the State of Ohio' " and that in so doing, they "effectively made all members of the General Assembly defendants." (Emphasis added in November 16 order.) *DeRolph v. State* (2001), 93 Ohio St.3d 628, 758 N.E.2d 1113, at fn. 2.

**{¶ 24}** The burden of meeting the constitutional standard announced by a majority of this court in *DeRolph I* and *DeRolph II* does not fall only upon the leaders of the General Assembly or only upon one party's caucuses. The Ohio General Assembly is composed of one hundred thirty-two members and not just the majority caucuses or the majority leadership. It is not for this court to determine or presuppose the precise combination of votes that produce any legislation—and certainly not the legislation that is the subject of this case. All members of the General Assembly are entitled to be represented by legal counsel.

**{¶ 25}** Of course, ensuring representation of the minority party at the mediation table will not alter political realities, nor should one infer that its presence in mediation necessitates its assent to achieve settlement. Clearly, any resolution reached through mediation (or as the result of court order, should mediation fail) must ultimately be implemented by the adoption of legislation by majorities in both chambers of the General Assembly. Accordingly, including representatives of both the majority and the minority parties is a practical and appropriate step to improve the chances that the mediation process will produce a result to which the greatest possible majority of the single entity of the General Assembly will assent.

**{¶ 26}** Nor does inclusion of representatives of the majority and minority parties in the mediation elevate or otherwise alter the status of the members of the General Assembly, as argued by the state, as that status existed before our order of

November 16. The presence of representatives of both parties will, however, ensure that a more complete representation of the views of the General Assembly, a party in the cause before us, is brought to the mediation.

{¶ 27} A vital component of mediation of public-policy disputes is that those with authority to implement a settlement agreement must be fully represented at the mediation table.[2] For example, in our order of November 16, we cited the settlement agreement in *Minneapolis Branch of the NAACP v. Minnesota* and *Xiong v. Minnesota* (2000), Hennepin Cty. Dist. Ct. Nos. 95-14800 and 98-2816, consolidated, unreported. That settlement was obtained only by the addition to mediation of school districts that were not parties to the suit.[3]

{¶ 28} The possibility of a mediated settlement decreases when key stakeholders are not at the table.[4] In Alabama, a court-ordered mediator helped parties reach agreement on a remedial plan to restructure the entire state educational system.[5] Unfortunately, the lack of participation by some groups caused implementation of the agreement to fail. *Id.*

{¶ 29} One should not misunderstand the manner in which mediations of the nature that we anticipate here may be conducted. Typically in mediations involving multiple disputing parties, the mediator meets separately with the parties in what are termed "private caucuses." In the private caucuses, the mediator

---

2. Brett A. Williams, Comment, Consensual Approaches to Resolving Public Disputes (2000), 2000 J.Disp.Resol. 135, 141, citing Lawrence Susskind & Jeffrey Cruikshank, Breaking the Impasse: Consensual Approaches to Resolving Public Disputes (1987) 186-236.

3. See Anne O'Connor, NAACP Lawsuit Settlement Enlists Suburban Schools: Minneapolis—St. Paul Star Tribune (Mar. 21, 2000). See Appendix.

4. Brett A. Williams, Comment, Consensual Approaches to Resolving Public Disputes (2000), 2000 J. Disp. Resol. 135, 146, citing Nancy Kubasek & Gary Silverman, Environmental Mediation (1988), 26 Am. Bus. L.J. 533, 550.

5. Michael A. Rebell & Robert L. Hughes, Schools, Communities, and the Courts: A Dialogic Approach to Education Reform (1996), 14 Yale L. & Policy Rev. 99, 161.

attempts to determine the actual positions of the parties—what they must have in a final agreement and what they are willing to yield. A party in a caucus may limit the information the mediator may share with opposing parties. Only the mediator may know the strategy, the motivation, and the ultimate settlement position of each party. After the mediator has met in private caucuses with the parties a joint meeting may be conducted. In some mediations, the parties never meet in a joint meeting.

**{¶ 30}** The important point is that any party to the mediation has control over the sharing of information that it may consider sensitive and may thereby protect the confidentiality of its position in the mediation.

**{¶ 31}** For this reason, no party in this mediation should be concerned that an attorney representing another party who may ultimately share in the responsibility of approving a settlement will gain some undue advantage by participating in the mediation.

**{¶ 32}** We trust that the parties identified in our November 16 order will devote their resources to the mediation. The task is difficult, but disputing parties and their lawyers all across this country have demonstrated that it is not impossible.

### III

### Status Conference Denied

**{¶ 33}** The Attorney General's request for a status conference is denied at this time. As is clear from the order of November 16, issues of both the procedure and substance of the mediation will be a primary focus of the mediation participants under the guidance of the master commissioner at the initial stage of the mediation.

*Requests denied.*

DOUGLAS, PFEIFER and LUNDBERG STRATTON, JJ., concur.

RESNICK and F.E. SWEENEY, JJ., dissent.

COOK, J., dissents.

_____

**ALICE ROBIE RESNICK, J., dissenting.**

**{¶ 34}** I dissent from today's opinion of the majority for the same reasons I dissented from the majority's order of November 16, 2001, in this matter. At that time, I stated that the "issue of transforming the basic funding system, of necessity, requires the participation of the Governor and every member of the General Assembly, not simply a select group facilitated by an individual from outside the state of Ohio." 93 Ohio St.3d , 628, 641, 758 N.E.2d 1113, 1123 (Resnick, J., dissenting).

**{¶ 35}** Obviously, the state defendants can settle this case only by enacting legislation that will bring our state's system for funding public schools into compliance with the Ohio Constitution. The majority seems to recognize this inescapable fact in its opinion today, stating, "The burden of meeting the constitutional standard announced by a majority of this court in *DeRolph I* and *DeRolph II* does not fall only upon the leaders of the General Assembly or only upon one party's caucuses. The Ohio General Assembly is composed of one hundred thirty-two members * * *. Clearly, any resolution reached through

mediation * * * must ultimately be implemented by the adoption of legislation by majorities in both chambers of the General Assembly."

**{¶ 36}** As I have stated numerous times at every phase of this litigation, it is crystal clear to me that only a complete systematic overhaul of the funding system will make the system "thorough and efficient." See Section 2, Article VI of the Ohio Constitution. I continue to question how, given the scope of the legislation that would have to be enacted to bring about a complete overhaul of the system, a comprehensive solution can emerge from mediation. Perhaps at mediation the defendants can commit to *proposing* specific legislation, or to *attempting* to enact something, but I do not see how the defendants can definitively agree to any specific solution.

**{¶ 37}** As we have seen in the past, the promise of the General Assembly's leadership to deliver votes from caucus members on any particular piece of legislation can be very different from the reality of actually amassing sufficient votes. This difference would seem to be particularly acute when, as here, the necessary legislation must be so extensive. Thus far, the attempts to restructure the funding system have lasted for many years and have involved many different members of the General Assembly as the years have passed. The present members of the General Assembly can in no way obligate future members to vote a certain way on prospective legislation. Mediation is not a viable solution if the funding system is to be truly reformed.

F.E. SWEENEY, J., concurs in the foregoing dissenting opinion.

_____

**COOK, J., dissenting.**

**{¶ 38}** I respectfully dissent from today's order regarding the details of the court-ordered, court-supervised settlement proceedings. The fact that this court's rule of practice regarding settlement conferences would, if followed, exclude individuals

from the negotiating table whom the majority finds necessary reveals how inherently ill suited judicial proceedings are to this case.

{¶ 39} The majority does not explicitly find that the Attorney General is wrong to seek to exclude the *amici* from settlement proceedings based on the status of those individuals. Rather, the majority contends that it is simply too late to object to the involvement of the *amici* to keep them from the negotiating table. But nowhere does the law accord *amici* the status of parties.

{¶ 40} The definition of an "*amicus curiae*" is "*[a] person who is not a party to a lawsuit* but who petitions the court or is requested by the court to file a brief in the action because that person has a strong interest in the subject matter." (Emphasis added.) Black's Law Dictionary (7 Ed.1999) 83. See, also, *Lakewood v. State Emp. Relations Bd.* (1990), 66 Ohio App.3d 387, 394, 584 N.E.2d 70, 74 ("*Amici curiae* are not parties to an action."). *Amici* should not participate in a settlement conference, then, because this court's own rules of practice provide for participation in settlement conferences *only by parties*. S.Ct.Prac.R. XIV(6)(A), for example, provides that "[a]t the settlement conference, the *parties* shall explore settling the case, simplifying the issues, and expediting the procedure, and may consider any other matter that might aid in resolving the case." (Emphasis added.) S.Ct.Prac.R. XIV(6)(B) states that "[i]f a case is referred for a settlement conference, each *party* to the case, or the representative of each *party* who has full settlement authority, and the attorney for each *party* shall attend the conference." (Emphasis added.) See, also, S.Ct.Prac.R. XIV(6)(C) ("On motion by a party, the Supreme Court may * * * extend filing deadlines.").

{¶ 41} Given that this court's rules of practice provide for the participation only of parties in a settlement conference, the majority's order—despite claiming otherwise—stands for the proposition that "a person who is not a party to a lawsuit" can be transformed into a party by operation of law, if he or she stays around the proceedings long enough. And the Attorney General should have, according to this

reasoning, objected earlier in these proceedings to the presence of the *amici* as *parties*, though they were not.  To treat the *amici* as if they were parties ignores this court's own rules and law on the subject.  See Civ.R. 17 to 25.

{¶ 42} This order compounds the prior missteps of this court in this case.  See *DeRolph v. State* (2001), 93 Ohio St.3d 309, 380-383, 754 N.E.2d 1184, 1245-1247 (Cook, J., dissenting).

_____