GUNN ET AL., APPELLANTS, *v.*
BOARD OF EDUCATION OF EUCLID
CITY SCHOOL DISTRICT ET AL.,
APPELLEES.

(No. 54038—Decided July 5, 1988.)

*Sweet, Caywood & Associates* and
*Barry L. Sweet,* for appellants.

*Green, Haines, Sgambati, Murphy & Marcala Co., L.P.A., Dennis Haines* and *Barry Laine,* for appellees Euclid Teachers Association and Charles J. Leberknight.

*Squire, Sanders & Dempsey, James H. Woodring, John T. Meredith* and *Susan C. Hastings,* for appellee board of education.

ANN MCMANAMON, J. Appellants are twelve former school teachers from the Euclid City School District. These teachers left the system pursuant to an early retirement incentive plan contained in the 1983-1985 collective bargaining agreement negotiated between appellee, the Euclid Board of Education ("the board"), and the Euclid Teachers Association ("the union"). A union negotiator, Charles J. Leberknight, is also an appellee.

After these retirements and while the 1983-1985 contract was still in force, the board adopted a resolution creating a new, more favorable incentive plan for prospective retirees.

The teachers filed an unfair labor practice charge with the State Employment Relations Board ("SERB") against the school board and the union. Prior to the SERB decision, which ultimately dismissed their claims, the teachers filed suit in common pleas court, alleging the actions of the board and the union constituted fraud, unfair labor practices, breach of contract, and deprivation of constitutional rights. Both the board and the union moved for and were granted summary judgment. The teachers timely appealed, and assert four assignments of error for our review.[1] Because we find that the teachers' arguments are not well-taken, we affirm the judgment of the trial court.

The incentive plan under which the teachers retired was incorporated into a collective bargaining agreement for the period from September 1, 1983 through August 31, 1985. Section 7.11.2, Article 7 of the plan provided a $5,000 bonus for any teacher eligible for full-service retirement by July 1, 1985. Interested teachers were required to notify the school superintendent of their intent to retire by December 1, 1983.

Section 15 of the collective bargaining agreement provided that the contract "may be altered, changed, added to, deleted from, or modified only through the voluntary, mutual consent of the parties * * *." The section further stipulated that negotia-

---

[1] See Appendix.

tions would not be reopened during the life of the contract.

The creation of the later incentive was made possible by the enactment of R.C. 3307.35, Am. Sub. H.B. No. 410 (140 Ohio Laws, Part II, 3755, 3759), effective August 7, 1983. This statute permitted employers whose employees were members of the State Teachers Retirement System to establish a retirement incentive plan by which the employer, at its discretion, could purchase up to five years or one-fifth of the employee's total service credit.

It is undisputed that such a buyout was not authorized by statute at the time of the parties' 1983-1985 contract negotiations in the spring of 1983, and there is no evidence in the record that such a plan was discussed at that time. Charles J. Leberknight, the union negotiator, stated in his deposition that he approached the board about the issue in early 1984 and again in early 1985. In a formal proposal dated March 12, 1985, Leberknight suggested that the contract be modified to include a new incentive plan to be effective in June 1985.

Ernest A. Husarik, then superintendent of the school district, averred in his deposition that he did not recall whether he had been approached in 1984 about a new incentive plan. He posited that the school board rejected Leberknight's March 1985 proposal because the board preferred to include the matter in the upcoming negotiations for the 1985-1987 contract. Husarick added that the feasibility of a buyout plan depended upon the passage of a school levy in May 1985.

On June 10, 1985, the board adopted Resolution No. 85-6-225, which established a buyout incentive. The plan, which was effective from June 10, 1985 through August 15, 1986, provided that the board would purchase an amount equal to five years or one-fifth of an eligible employee's total service credit, whichever was less. An eligibility ceiling limited participation to twelve and one-half percent of the employees.

According to Husarik's affidavit, the plan was implemented before the expiration of the contract on August 31 to coordinate the retirements and replacements with the start of the new school year. Leberknight insisted in his deposition that at the time of the resolution, the union no longer wished to amend the contract, but preferred instead to include a retirement plan in the new contract. Although Leberknight characterized the resolution as "unilateral," it is apparent that it embodied the parties' negotiations on the subject. Indeed, the record contains a draft of the resolution initiated by Leberknight and a board representative. Thus, it is clear the union acquiesced in the manner in which the new plan was adopted.

The record contains numerous affidavits of the affected teachers criticizing the methods employed by the board and the union to implement the incentive plans. The affiants averred that they were assured by Husarik, Leberknight and others in 1983 that no other incentive plan would be forthcoming. Specifically, Leberknight allegedly spoke during a meeting at a shopping mall where he told the teachers the initial plan was "the best we could get." Husarik allegedly promoted the first plan at a faculty workshop, emphasizing that no other plan was available. The affiants averred they relied on these representations in deciding whether to retire, and that they would not have retired had they known a buyout incentive would later be offered.

The teachers also complain of instances of "double-dipping," by which some teachers who retired later enjoyed the benefits of both plans. Husarik conceded that this practice

had occurred, but he maintained that the double payments were legally unavoidable because the plans contained overlapping eligibility dates. Husarik also admitted that the eligibility ceiling had not been strictly enforced.

The teachers' first three assignments of error contest the entry of summary judgment on their claims for breach of contract, fraud, and deprivation of constitutional rights. In each of these assignments the teachers contend, as a threshold matter, that the common pleas court had jurisdiction to hear the claim. This contention is in response to the argument, asserted by the appellees in the lower court and reiterated on appeal, that the claims were within the exclusive jurisdiction of SERB. Since these three assignments present a common, and we believe dispositive issue, they shall be consolidated for review.

R.C. 4117.12 empowers SERB to investigate and remedy unfair labor practices committed by public employers or public employee organizations. The common pleas court acts as an appellate court to review final orders of SERB and issue decrees enforcing, modifying or setting aside orders of the board. R.C. 4117.13(D).

This court has held that "conduct which actually or arguably constitutes an unfair labor practice under R.C. Chapter 4117 is subject to the exclusive jurisdiction of SERB." *Turnik* v. *Cleveland* (May 22, 1986), Cuyahoga App. No. 50390, unreported, at 4. See, also, *Gray* v. *Toledo* (May 15, 1987), Lucas App. No. L-86-113, unreported. Thus, if the conduct underlying the teachers' claims meets this liberal standard of preemption, the trial court lacked jurisdiction to hear the action and correctly granted summary judgment.

In support of their contract claim

the teachers contend the board resolution of June 1985 was a unilateral modification of the retirement incentive provision in the 1983-1985 collective bargaining agreement. The teachers argue that the union breached provisions in the agreement by failing to secure the members' ratification, and that both sides violated Section 15, which forbade reopening negotiations.

The fraud claim is premised on the purported misrepresentation by agents of the board and the union in promoting the first incentive plan. The teachers further assert that the union and Leberknight perpetuated a fraud by negotiating for the second plan while the first one was still in force.

The alleged constitutional violations are based on the claimed "involuntary" nature of the retirements and the "discriminatory" treatment of the teachers relative to those who participated in both plans.

Construing the evidence most favorably to the teachers, Civ. R. 56(C), we conclude the union's conduct was arguably a violation of R.C. 4117.11(B)(6). This section provides:

"(B) It is an unfair labor practice for an employee organization, its agents, or representatives, or public employees to:

"* * *

"(6) Fail to fairly represent all public employees in a bargaining unit[.]"

Since the gist of the teachers' claims against the union is its alleged failure to protect their interests in the general context of bargaining negotiations, we conclude the union arguably breached its duty of fair representation.

We recognize that the existence of the union's duty depends on the resolution of a number of other issues, notably the effect of the teachers' status as retirees at the time the second plan was adopted. However, we

hold the determination of these issues in the first instance is the function of SERB.

The conduct of the employer was arguably a violation of R.C. 4117.11(A)(1) and (A)(5), which provide:

"(A) It is an unfair labor practice for a public employer, its agents, or representatives to:

"(1) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code or an employee organization in the selection of its representative for the purposes of collective bargaining or the adjustment of grievances;

"* * *

"(5) Refuse to bargain collectively with the representative of his employees recognized as the exclusive representative or certified pursuant to Chapter 4117. of the Revised Code[.]"

A public employer's unilateral modification of the terms or conditions of employment may constitute a refusal to bargain collectively with the union. See *State Emp. Relations Bd.* v. *Bedford Heights* (1987), 41 Ohio App. 3d 21, 534 N.E. 2d 115; *In re Bedford Heights* (July 24, 1987), SERB 87-016, affirmed (Cuyahoga C.P. 1987), 1987 SERB Official Rptr. 4-57; *Perrysburg Bd. of Edn.* v. *State Emp. Relations Bd.* (Wood C.P. 1987), 1987 SERB Official Rptr. 4-18. Consistent with our earlier analysis, we need not decide whether the teachers' dispute actually involved a mandatory bargaining subject. For purposes of determining jurisdiction, it suffices to say that the school board's adoption of the resolution during the pendency of the 1983-1985 contract was arguably a refusal to bargain.

We thus conclude the common pleas court lacked jurisdiction to hear any of the teachers' claims. Moreover, we note from the record before us that summary judgment would have been appropriate on the merits of the claims. The teachers received all the benefits they were guaranteed under the only contract to which they were parties. As for the fraud claim, the record is devoid of evidence that the board or the union knowingly or recklessly made false representations about the first incentive plan, or intended to mislead the teachers and induce them to retire. See *Burr* v. *Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St. 3d 69, 23 OBR 201, 491 N.E. 2d 1101, paragraph two of the syllabus. Since the retirements must be viewed as voluntary, the teachers were not deprived of a property interest without due process of law. Finally, the disparate impact of the retirement incentives was inevitable and affected not only the teachers who retired under the earlier plan, but those who retired under no incentive plan at all. We hold that the effect of the retirement policies on the teachers, while unfortunate, does not implicate their constitutional rights.

The teachers' fourth assignment of error contends that summary judgment was improper because material issues of fact remain unresolved regarding each of their claims. Although the facts in this case were not undisputed, the factual issues, if resolved in the teachers' favor, would not alter the conclusions already set forth. Thus, there were no genuine issues of material fact, and the appellees were entitled to judgment as a matter of law.

Accordingly, the final assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PATTON and J. V. CORRIGAN, JJ., concur.

Appendix

I

"The common pleas court erred in denying jurisdiction to hear appellants' *prima facie* case for breach of contract."

II

"The common pleas court erred in denying jurisdiction to hear appellant's *prima facie* case for fraud."

III

"The common pleas court denied due process and equal protection by denying jurisdiction to hear appellants' *prima facie* case for deprivation of property rights protected by 42 U.S.C. section 1983."

IV

"The common pleas court erred in granting summary judgment where multiple and genuine questions of material facts remain."