**Lakewood**
**v.**
**State Employment Relations Board**
[Cite as 4 AOA 315]

Case No. 57153
Cuyahoga County, (8th)
Decided June 21, 1990

David Harbarger, Director of Law, City of Lakewood, 12650 Detroit Avenue, Lakewood, Ohio 44106, Lee J. Hutton, Paul A. Monahan, Stephen J. Sferra, Duvin, Cahn & Barnard, Erieview Tower, 20th Floor, 1301 East Ninth Street, Cleveland, Ohio 44114, for Appellant, City of Lakewood.

Joseph M. Oser, Assistant Attorney General, Chief, Labor Relations Section, 30 East Broad Street, Room 1515, Columbus, Ohio 43266-0410, for Appellee, State Employment Relations Board.

Felix C. Wade, William J. Barath, Schottenstein, Zox & Dunn, The Huntington Center, 41 S. High Street, 26th Floor, Columbus, Ohio 43215; Special Counsel to Attorney General Anthony J. Celebrezze, Jr., on behalf of the State of Ohio, Department of Administrative Services, Office of Collective Bargaining and John E. Gotherman, Calfee, Halter & Griswold, 1800 Society Building, Cleveland, Ohio 44114, for Amicus Curiae, Ohio Municipal League.

Joseph Diemert, William F. Schmitz, 1360 Som Center Road, Cleveland, Ohio 44124-2189, for

*Intervenor, International Association of Firefighters, Local 382.*

McMANAMON, J.

The City of Lakewood ("the city") unilaterally changed the rotation of its firefighters' work hours from a two platoon to a three platoon system in January 1986. This change provided for alternating shift cycles of twenty-four hours on and forty-eight hours off duty. Under the previous two platoon system firefighter shift cycles had been 24 hours on, 24 hours off, 24 hours on and 72 hours off, duty. Hours worked in excess of fifty-four per week were accumulated and taken as vacation days.

The change precipitated an unfair labor practice claim by the International Association of Firefighters, Local 382 ("the union") against the city at the State Employment Review Board ("SERB"). The union posited that the city violated the firefighters' rights under R.C. Chapter 4117. After a hearing, SERB issued a cease and desist order which was affirmed by the common pleas court. This appeal, raising three assignments of error, followed. The city maintains that, while its action was within the prerogatives it retained under the management rights clause of the collective bargaining agreement, it did not fail to bargain over the decision to implement the three platoon system and, further, that it was not obligated to bargain because the union failed to demand negotiations.

At the outset, we note that our review of the decision of an administrative agency is limited. Factual findings of SERB are conclusive where supported by substantial evidence in the record. *Lorain City Bd. of Edn.* v. *SERB* (1988), 40 Ohio St. 3d 257, 260; *SERB* v. *Bedford Hts.* (1987), 41 Ohio App. 3d 21. Furthermore, the General Assembly established SERB to minimize possible conflicting interpretations of R.C. 4117.08 and other provisions of the act by Ohio courts. *Lorain City Bd. of Edn., supra.* A reviewing court, therefore, "* * * must accord due deference to SERB's interpretation of R.C. Chapter 4117." *Id.* at 260.

Such deference, however, is not afforded to SERB's interpretation of a collective bargaining agreement. See *Local Union 1395, Internatl. Brotherhood of Elec. Workers* v. *N.L.R.B.* (D.C. Cir. 1986), 797 F.2d 1027. Though it may be appropriate to "* * * give weight to the interpretation of regulated parties' agreements by an administrative agency charged with * * *" enforcing a statute, contract interpretation has generally been considered the "expertise of the judiciary." *Id.* at 1030. The *Local Union 1395* court noted that parties to a collective bargaining agreement may either file an unfair labor practice charge with the National Labor Relations Board ("N.L.R.B.") or bring suit to enforce the agreement in district court. Principles of federal contract law are to be applied in both proceedings. *Id.* The court explained that if contract terms might have different meaning in different forums, then neither party would be certain of the rights it obtained or conceded in negotiating an agreement. *Id.*, citing *Textile Workers* v. *Lincoln Mills* (1957), 353 U.S. 448, 456-457. The court therefore held that the N.L.R.B.'s interpretation of an agreement was entitled to "no particular deference." *Id.* at 1031. Deference is extended only to factual findings of an administrative agency on matters concerning the intent of contracting parties. *Id.* at 1030. It is the ultimate legal conclusion attached to the words and conduct of the parties that is subject to review by the court. *Id.*

R.C. Chapter 4117 permits the parties to a collective bargaining agreement to enforce the provisions of that contract in a common pleas court or to seek a remedy by filing an unfair labor practice charge with SERB. R.C. 4117.09(B)(1) and 4117.12. See *Braswell* v. *Lucas Metro. Housing Authority* (1985), 26 Ohio App. 3d 51. Were we to give particular deference to SERB's interpretation of a collective bargaining agreement, "it would be free to apply different, if sufficiently reasonable, standards of interpretation than those applied by courts independently entertaining suits brought to enforce such agreements." *Local Union 1395 supra*, at 1027. Cf. *Findlay Bd. of Edn.* v. *Findlay Edn. Assoc.* (1990), 49 Ohio St. 3d 129 (where parties bargain for an arbitrator's interpretation of a contract, the court will not disturb the arbitrator's award if it draws it s essence from a collective bargaining agreement, unless the arbitrator's interpretation is unlawful, arbitrary or capricious).

Therefore, though SERB's factual findings on matters of intent of contracting parties are entitled to due deference, we hold its interpretation of the provisions of a contract is not.

In its first assignment of error, the city maintains that it had no obligation to bargain over the change to the three platoon system because the collective bargaining agreement expressly granted the city the right to make the change. We disagree.

R.C. 4117.08 provides that all matters pertaining to wages, hours, or terms and other

conditions of employment are subject to the collective bargaining process. *Lorain City Bd. of Edn., supra.*

"[I]f a public employer intends to implement a decision which 'affects' wages, hours, terms and conditions of employment of a bargaining unit, then the employer must bargain on the issue." *Id.* at 261. Unilateral modification of hours or conditions of employment may constitute a refusal to bargain with the union. *Gunn* v. *Euclid City School Dist. Bd. of Edn.* (1988), 51 Ohio App. 3d 41.

The city acknowledges in their brief that the decision to implement the shift change is a mandatory subject of bargaining because it affects fire fighters' hours. The city urges however, that the management rights clause in the 1984 contract, for which it bargained, granted the city the right to change the platoon system without additional bargaining.

The alteration of the scheduling system relates to and affects the hours and conditions of employment on which the fire fighters had a statutory right to bargain. See *Bedford Hts., supra.* Unless a collective bargaining agreement specifically eliminates a right provided an employee by statute, an employee retains his entitlement to that right. See *State, ex rel. Clark,* v. *Greater Cleveland Regional Transit Auth.* (1990), 48 Ohio St. 3d 19 (a political subdivision must afford employees rights accrued under R.C. 9.44 unless the collective bargaining agreement specifically excludes those rights).

Further, "* * * a waiver must be 'clear and unmistakable' from the terms of an agreement and * * * where an alleged waiver is based upon negotiations, the evidence must be clear that the union consciously yielded its statutory right." *American Cyanamid Company* (1970), 185 N.L.R.B. No. 135. See, also, *Internatl. Brotherhood of Electrical Workers, Local 803* v. *N.L.R.B.* (C.A. 3, 1987) 826 F.2d 1283.

The management rights clause in the 1984 collective bargaining agreement states, in part:

"The City shall have the exclusive right to manage the operations, control the premises, direct the working forces, and maintain maximum efficiency of operations. Specifically, the City's exclusive management rights include the sole right to hire, discipline and discharge for just cause, lay off and promote, * * * to determine the size and duties of the work force, the number of shifts required, and all work schedules; to establish reasonable residency requirements; to establish, modify, consolidate, or abolish jobs; and to determine staffing patterns, including assignments of employees, numbers employed, duties to be performed, qualifications required, and areas worked; subject only to the restrictions and regulations governing the exercise of these rights as are expressly provided in this Agreement, and also subject to those rights and obligations established by the Lakewood Civil Service Commission."

We are mindful that where, after negotiations, parties reduce mutual promises to an integrated, unambiguous writing executed by them, a court will not give such a contract "a construction other than that which the plain language provides." *Aultman Hosp. Assn.* v. *Community Mut. Ins. Co.* (1989), 46 Ohio St. 3d 51, syllabus. Moreover, the goal of contract interpretation is to determine the intent of the parties. *Stoney's Trucking Co.* v. *Public Util. Comm.* (1972), 32 Ohio St. 2d 139. See, also, *Blatnicky* v. *Sheller-Globe Corp.* (May 17, 1990), Cuyahoga App. No. 56695, unreported.

Evidence before the hearing officer indicated that the union twice rejected the city's proposals to change to the three platoon system. There is nothing in the record or the agreement to show that the union yielded its statutory right. No language in the management rights clause clearly gives the city the unilateral right to change the scheduling system. We hold that SERB correctly concluded that this clause did not contain a specific waiver of the right to bargain over the changes ordered by the city. Cf. *Auburn Firefighters Assoc., Local 797, IAFF, AFL-CIO* v. *Morrison* (Maine Labor Relations Bd., Mar. 3, 1983), 3 Public Emp. Bargaining (CCH), Paragraph 43,592 (city raised the subject of a light duty program in prior negotiations, thereby indicating that it did not believe it had reserved the right to implement such a program unilaterally).

Accordingly, the first assignment of error fails.

Since the city's second and third assignments of error challenge factual findings by SERB, we will address them jointly.

The role of an appellate court reviewing matters which are supported by substantial evidence in the record is to determine whether the trial court abused its discretion in so concluding. *Lorain Bd. of Edn., supra,* at 261. Absent an abuse of discretion we must affirm the judgment of the trial court. *Id.* Abuse of discretion is more than an error in judgment, it implies "'perversity of will, passion, prejudice, partiality or moral

delinquency.'" *Id.*, citing *State, ex rel. Commercial Lovelace Motor Freight, Inc.* v. *Lancaster* (1986), 22 Ohio St. 3d 191, 193. Although this court might have arrived at a different conclusion than did SERB, we may not substitute our judgment for that administrative agency or the trial court. *Id.*

The city insists in its second assignment, that it did bargain with the union over implementation of the new system. Evidence presented at the hearing reveals otherwise. The city, in fact, refused to negotiate concerning its decision to implement the new scheduling system. Lakewood Fire Chief Mroz told the examiner that he announced that the fire department would be changing to the three platoon system during a labor-management meeting in July 1985. He explained, at the hearing, that it was only a question of when, not if, the new system would be implemented.

At that meeting, the union responded that the changeover was a proper subject for the upcoming contract negotiations. The union next attempted to discuss the issue at several fall contract sessions but the city refused to bargain.

We find no abuse of discretion by the trial court. These facts do not demonstrate that the city attempted the good faith bargaining contemplated by R.C. 4117.01(G).

The city's third assignment of error alleges that the union slept on its rights by failing to demand bargaining.

Again, the record supports the trial court's conclusion that the union objected to the city's plan to implement the three platoon system at every opportunity. The union cooperated with the city to protect other rights of its members and to make any transition to a new system smooth. We find no abuse of discretion by the trial court in reaching this conclusion.

Accordingly, the second and third assignments fail.

The Department of Administrative Services and the Ohio Municipal League have presented *amicus curiae* briefs which address the issues raised by the parties. The Ohio Municipal League also asks us to consider its position that the final paragraph of R.C. 4117.08(C) may not be imposed on the parties unless they have specifically agreed to that language in their collective bargaining agreement. This issue was not raised by the parties and we decline to address it.

We recognize the appearance of *amicus curiae* for the purpose of assisting the court on matters of law about which the court is doubtful. *Amicus curiae* are not parties to an action and may not, therefore, interject issues and claims not raised by parties. *Pepper Pike* v. *Hirschauer* (Feb. 1, 1990), Cuyahoga App. Nos. 56963, 56964, 56965, 57667, unreported. See, also, *City of Columbus* v. *Tullos* (1964), 1 Ohio App. 2d 107; *Board of Commissioners* v. *Coopers Unknown Heir* (1947), 50 Ohio Law Abs. 20.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KRUPANSKY, P.J., concurs.
HOFSTETTER, J., dissents.

Sitting by Assignment, Judge Edwin T. Hofstetter, retired from the Court of Appeals of Ohio, Eleventh Appellate District.