CARTER et al., Appellants,

v.

TROTWOOD–MADISON CITY BOARD OF EDUCATION, Appellee.

[Cite as *Carter v. Trotwood–Madison City Bd. of Edn.*, 181 Ohio App.3d 764, 2009-Ohio-1769.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22830.

Decided April 10, 2009.

Martin, Folino, Harmon & Stachler and Tyler D. Starline, for appellants.

Cooper, Gentile & Washington, Dwight A. Washington, and Beverly A. Meyer, for appellee.

FAIN, Judge.

{¶ 1} Plaintiffs-appellants Paula Carter and Susie Toney jointly appeal from an order of the trial court dismissing their complaint against defendant-appellee Trotwood–Madison City Board of Education. Carter and Toney contend that the trial court erred in sustaining the board's motion to dismiss because, as retirees, they do not fit within the definition of individuals who are required to file grievances under the collective-bargaining agreement entered into by the board and its employees. Carter and Toney also contend that their contractual action is not preempted by R.C. Chapter 4117, because they were not "public employees" as defined by R.C. 4117.01(C) when their cause of action accrued.

{¶ 2} We conclude that the trial court did not err in granting the motion to dismiss. Although we conclude that the trial court erred in requiring Carter and Toney to exhaust grievance procedures in the collective-bargaining agreement, this error does not require reversal. The trial court correctly held that it lacked subject-matter jurisdiction over the action because plaintiffs' claims arise from, and depend upon, a collective-bargaining agreement with the board. The State Employee Relations Board has exclusive jurisdiction over the case under R.C. Chapter 4117, which provides exclusive remedies and does not allow for a private right of action.

{¶ 3} Accordingly, the judgment of the trial court is affirmed.

I

{¶ 4} The contract at issue in this case is a collective-bargaining agreement ("CBA") entered into between the board and the Trotwood–Madison Education Association ("TMEA"). The CBA was effective from July 1, 2005, though June

30, 2007. At the time the CBA was adopted, Carter and Toney were full-time certified board employees. Under the CBA, the board recognized TMEA as the sole and exclusive bargaining agent "for all full-time and part-time, certified and support staff employees, hereinafter 'unit members,' not excluded herein."

{¶ 5} The CBA is an extensive agreement covering various terms and conditions of employment, including retirement incentives. Article 14(J) of the CBA states:

{¶ 6} "1. The Board shall offer a retirement incentive to all qualifying unit members.

{¶ 7} "2. To qualify for this retirement incentive, the unit member must retire under one of the Ohio public employees' retirement systems before or by no later than the end of the day on June 30 of the contract year in which he/she will have thirty years of retirement service credit.

{¶ 8} "3. Example A: A unit member who separates from employment within the timetable but who does not retire is not eligible.

{¶ 9} "4. Example B: Likewise, a unit member who waits until after he/she has begun the next work year after becoming eligible for thirty years of retirement service credit is not eligible.

{¶ 10} "5. Example C: A unit member who retired under one of the systems with less than thirty years of service credit still qualify [sic] for the incentive.

{¶ 11} "6. To remain qualified, the member must give, by March 31 of the year of retirement, written notice to the Superintendent of intent to retire. This effective date of retirement must be no earlier than the teachers' last workday or June 30, whichever comes sooner, in a given year. A unit member who either misses the notification deadline or otherwise fails to retire within the time frame outlined herein forfeits his/her rights to retirement incentive.

{¶ 12} "7. The incentive shall be equal to 2.5 [per cent] of the given unit member's annual wages/salary in the year leading to retirement times the number of years given unit member has been employed by the Board, not to exceed 50% of the given unit member's annual wages/salary. The Board will pay the incentive no later than January 1[st] of year following retirement and no later than fourteen (14) months after the given unit member's effective date of retirement, provided however, that prior to making payment, the Board may require the retired unit member to submit proof by way of photocopy of a pension check or other credible document that the individual has retired."

{¶ 13} According to the complaint, Carter gave the superintendent written notice of her intention to retire under the State Teachers Retirement System ("STRS"), effective no later than the end of the day on June 30, 2006. Carter

then retired under STRS with an accumulation of 29.40 years of service credit. Similarly, Toney gave the superintendent written notice of her intention to retire by June 30, 2006, and subsequently retired with 30 years of service in STRS and 5.33 years of service credit with the School Employees Retirement System of Ohio ("SERS").

{¶ 14} In July 2007, approximately 13 months later, the board denied Carter's and Toney's requests for the retirement incentives. The complaint does not indicate the reason for the denial. Carter and Toney apparently did not attempt to file a grievance with the board pursuant to the CBA, nor did they file any unfair-labor-practice claims with the State Employment Relations Board ("SERB").

{¶ 15} The CBA contains a four-step grievance procedure, which applies "[w]henever the Association, a unit member or a group of unit members, hereinafter 'grievant,' believes one or more provisions of this Agreement have been violated, misinterpreted and/or applied."

{¶ 16} Step One requires discussion of the grievance with the lowest level supervisor who could reasonably appear to have authority to resolve the grievance. Under the CBA, the grievance must be presented orally and identified as a grievance within 30 working days after the grievant knows or should know about the facts giving rise to the grievance. Thereafter, the grievance is processed by appeal to higher level administrators, with various time frames for appeal. Ultimately, if the grievance is not resolved by appeal to the superintendent, Step Four allows an appeal, with TMEA concurrence, to final, binding arbitration.

{¶ 17} Under the agreement, the parties may agree to waive or extend the time limits. Finally, the CBA states that "[u]nless contrary to law, the decision of the arbitrator shall be final and binding upon the Board of Education, the Association, and grievant(s)."

{¶ 18} Instead of pursuing their claims through the grievance process, Carter and Toney filed this action against the board in March 2008, alleging breach of contract. The board then filed a motion to dismiss under Civ.R. 12(B)(1) and (6), contending that the trial court lacked subject-matter jurisdiction because the claims were preempted by R.C. Chapter 4117. The board further argued that Carter and Toney failed to exhaust administrative remedies and were barred from bringing suit because only parties to a collective-bargaining agreement may bring suit under R.C. Chapter 4117. Specifically, the board contended that no private right of action exists.

{¶ 19} The trial court agreed with the board and dismissed the action. Carter and Toney appeal from the dismissal of their cause of action.

## II

{¶ 20} Carter and Toney's sole assignment of error is as follows:

{¶ 21} "The trial court prejudicially erred by sustaining the defendant's motion to dismiss."

{¶ 22} Carter and Toney have presented four statements of issues under this assignment of error. Their first statement of issues is as follows:

{¶ 23} "Under Ohio law, are the breach of contract claims subject to the dispute resolution procedures identified in the collective bargaining agreement ('CBA') when Carter and Toney did not satisfy the CBA definitions of 'employees' or 'unit members' at the time that their causes of action accrued?"

{¶ 24} Under this heading, Carter and Toney argue that the trial court erroneously focused on the accrual date of their contractual rights. They contend that the proper focus should be the date of accrual of their respective causes of action for breach of contract. At this latter time, Carter and Toney were "retirees" and did not qualify as "employees" or "unit members" under the CBA. Therefore, Carter and Toney contend that the grievance procedures in the CBA did not apply, and the case should not have been dismissed on this ground.

{¶ 25} The trial court dismissed the case under Civ.R. 12(B)(1) and Civ.R. 12(B)(6).

{¶ 26} "Appellate review of a trial court's decision to dismiss a case pursuant to Civ.R. 12(B)(1) and (B)(6) is de novo." (Citations omitted.) *Crestmont Cleveland Partnership v. Ohio Dept. of Health* (2000), 139 Ohio App.3d 928, 936, 746 N.E.2d 222. De novo review means "that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, at ¶ 16.

{¶ 27} "To dismiss a complaint under Civ.R. 12(B)(1), we must determine whether a plaintiff has alleged any cause of action that the court has authority to decide. * * * Dismissal of a claim pursuant to Civ.R. 12(B)(6) is appropriate only where it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." (Citations omitted.) *Crestmont*, 139 Ohio App.3d at 936, 746 N.E.2d 222. Furthermore, when a trial court determines its own jurisdiction, it "has authority to consider any pertinent evidentiary materials." *Nemazee v. Mt. Sinai Med. Ctr.* (1990), 56 Ohio St.3d 109, 111, 564 N.E.2d 477, fn. 3.

{¶ 28} " 'It is a well-established principle of Ohio law that, prior to seeking court action in an administrative matter, the party must exhaust the available avenues of administrative relief through administrative appeal.' * * * In Ohio, the exhaustion-of-administrative-remedies doctrine is a court-made rule

of judicial economy. * * * As the United States Supreme Court has stated, '[e]xhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.' * * * The purpose of the doctrine ' * * * is to permit an administrative agency to apply its special expertise * * * and in developing a factual record without premature judicial intervention.' * * * The judicial deference afforded administrative agencies is to ' * * * "prepare the way, if the litigation should take its ultimate course, for a more informed and precise determination by the Court * * *." ' " (Citations omitted.) *Nemazee*, 56 Ohio St.3d at 111–112, 564 N.E.2d 477.

■ {¶ 29} The exhaustion requirement applies not only to remedies provided by administrative agencies. It also applies to private administrative remedies, like those entered into by physicians and hospitals or the contract involved in the present case. Id. at 114, 564 N.E.2d 477. Exhaustion would, therefore, ordinarily be required, since the Trotwood CBA requires that grievances be processed through several levels and taken to arbitration before a court proceeding may be initiated. The issue is whether Carter and Toney may be exempted from the grievance process.

■ {¶ 30} The grievance process outlined in Article 5 of the CBA states, "Whenever the Association, a unit member or a group of unit members, hereinafter 'grievant', believes one or more provisions of this Agreement have been violated, misinterpreted and/or applied, the grievant may process a grievance * * *." The CBA defines "unit members" as "all full-time and part-time, certified and support staff employees * * *, not excluded herein." The excluded employees consist of individuals like administrators, persons assigned to the board central office, and so forth. The agreement does not mention retirees, nor does it include retirees in the definition of "unit member."

{¶ 31} In *Rutledge v. Dayton Malleable, Inc.* (1984), 20 Ohio App.3d 229, 20 OBR 290, 485 N.E.2d 757, the Tenth District Court of Appeals concluded that retirees would be required to exhaust remedies only when the collective bargaining agreement provides " 'in express words that retirees must exhaust contractual remedies before suing the employer.' " Id. at 236, 20 OBR 290, 485 N.E.2d 757, quoting *Anderson v. Alpha Portland Industries, Inc.* (C.A.8, 1984), 727 F.2d 177, 185. The Tenth District noted that retirees come within one of several exceptions to the general rule that employees must attempt to use contract-grievance procedures. The reasons for this exception include that the union does not owe a duty of fair representation to persons who are not members of the

collective-bargaining unit and the possibility of potential conflicts of interest between retirees and active employees. Id.

{¶ 32} *Rutledge* has been followed in a number of subsequent decisions. See, e.g., *Featherstone v. Columbus City School Dist. Bd. of Edn.* (Mar. 30, 1999), Franklin App. No. 98AP–889, 1999 WL 177561, *3 (holding that a retired teacher did not fail to exhaust administrative remedies, because he was not subject to the grievance procedure in the collective-bargaining agreement). The board contends that these cases are incorrectly decided because they rely on private-sector labor-law principles, and most predate the Ohio Supreme Court's pronouncements about the restrictive effects of R.C. Chapter 4117 in *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 167, 572 N.E.2d 87.

{¶ 33} In *Franklin Cty. Law Enforcement,* an association and certain employees filed a complaint alleging that the employer and current union had entered into a partial settlement agreement of economic issues for the purpose of defeating the employees' right to a fair vote on union representation. 59 Ohio St.3d at 167–168, 572 N.E.2d 87. The complaint further alleged that the agreement violated a statute not contained in R.C. Chapter 4117, which gave the employer the sole right to fix employee compensation. Id. at 168, 572 N.E.2d 87. The plaintiffs' argument, therefore, was that the trial court had jurisdiction to hear the matter because the matters did not solely involve R.C. Chapter 4117. However, the Ohio Supreme Court held that SERB has exclusive jurisdiction to hear matters committed to it under R.C. Chapter 4117. The court stressed that R.C. Chapter 4117 establishes new rights and contains a comprehensive framework for resolving public-sector labor disputes. Id. at 169, 572 N.E.2d 87. Because these procedures do not provide for the filing of private actions in common pleas court, the Ohio Supreme Court upheld the dismissal of the complaint. Id. at 170–172, 572 N.E.2d 87.

{¶ 34} After *Franklin Cty. Law Enforcement* was decided in 1991, lower appellate courts continued to apply *Rutledge* in public-sector cases. For example, in *Yahraus v. Circleville* (July 31, 2001), Pickaway App. No. 01CA1, 2001 WL 884097, a retired city employee generally bypassed the grievance procedure and filed an action in municipal court to contest the city's denial of her request for longevity pay. 2001 WL 884097, at *1. After the trial court granted longevity pay, the city appealed, contending that the employee had failed to exhaust administrative remedies pursuant to the collective-bargaining agreement. The Fourth District Court of Appeals disagreed, stating:

{¶ 35} "Generally, an employee's failure to exhaust his or her administrative remedies pursuant to a collective bargaining agreement deprives the courts of jurisdiction to hear the employee's complaint. * * * However, retirees seeking

to resolve a dispute arising from events that occurred after their retirement usually are not subject to a collective bargaining agreement. Rather, 'absent a provision in the collective bargaining agreement that expressly requires retirees to exhaust administrative remedies before filing suit against the employer, a retiree's suit against the employer is not barred by his failure to pursue grievance and arbitration procedures.'" Id. at *3, quoting *Independence Fire Fighters Assn. v. Independence* (1997), 121 Ohio App.3d 716, 700 N.E.2d 909.

{¶ 36} Like *Yahraus, Independence Fire Fighters Assn.* involved retirees who disputed the employer's calculation of payments allegedly due under a collective-bargaining agreement. 121 Ohio App.3d at 718, 700 N.E.2d 909. Although the union had originally filed a grievance, the grievance was withdrawn, and the retirees filed suit in common pleas court. Id. at 719–720, 700 N.E.2d 909. In concluding that the retirees were not bound to follow the grievance procedure, the Eighth District Court of Appeals followed the earlier decision in *Rutledge* and *Medley v. Portsmouth* (Dec. 23, 1996), Scioto App. No. 96 CA 2426, 1996 WL 737587 (a Fourth District Court of Appeals public-sector case). 121 Ohio App.3d at 720–721, 700 N.E.2d 909.

{¶ 37} The Eighth District also discussed its prior decision in *Fenske v. Brook Park* (Feb. 3, 1994), Cuyahoga App. No. 64525, 1994 WL 30439, which had held that a collective-bargaining agreement applied to a retired police officer. In *Fenske*, the Eighth District had stated " '[T]he relevant time that a person need be an employee is the time the incident in question occurred.'" *Independence Fire Fighters*, 121 Ohio App.3d at 721, 700 N.E.2d 909. The Eighth District distinguished *Fenske*, stating:

{¶ 38} "The assault for which Fenske sought indemnification occurred while he was on active duty. In contrast, the firefighters challenged the calculation of amounts paid to them upon retirement for accrued but unused holidays, sick leave, and vacation time. Since, upon their retirement, the employees were no longer employees, we conclude that they were not governed by the collective bargaining agreement. Accordingly, the firefighters need not have exhausted their administrative remedies before filing the instant action." Id. at 721, 700 N.E.2d 909. Accord *Marinelli v. Mentor Exempted Village Bd. of Edn.*, Lake App. No. 2002–L–170, 2003-Ohio-6236, 2003 WL 22763441, *2.

{¶ 39} One other case has taken a different approach. In *Summit Cty. Children's Serv. Bd. v. Local No. 4546, Communications Workers of Am.*, Summit App. No. 21184, 2003-Ohio-726, 2003 WL 356300, the union filed a grievance on behalf of former employees who were allegedly due a retroactive pay increase under a collective-bargaining agreement. After an arbitrator awarded the pay increase, the employer appealed, claiming that the arbitrator had lacked subject-matter jurisdiction, because the former employees were no

longer "bargaining unit members" under the agreement, and neither the union nor the employees had standing to file grievances on behalf of the former employees. Id. at ¶ 18. The Ninth District Court of Appeals concluded that the arbitrator did not act unlawfully or capriciously in concluding that he possessed subject-matter jurisdiction. Id. at ¶ 21. The arbitrator found as follows:

{¶ 40} " 'The grievance is based on the contention that entitlement under the collective bargaining agreement relates back to the time when the individuals had the status of bargaining unit employees, and it therefore arises out of the relationship, and out of the collective bargaining agreement.' " Id. at ¶ 20.

{¶ 41} The trial court in the present case used the same reasoning when it concluded that Carter and Toney had failed to exhaust administrative remedies. While this approach has some logic, and perhaps should be adopted, we cannot ignore the wording of the CBA and the case law, which seems almost uniformly to follow the approach that retirees are not bound by the grievance procedure in the collective-bargaining agreement unless they are specifically included. If the board and TMEA had wanted to include "retirees" within the grievance procedure, they could have added wording to that effect.

{¶ 42} In *Leon v. Boardman Twp.*, 100 Ohio St.3d 335, 2003-Ohio-6466, 800 N.E.2d 12, the Ohio Supreme Court stressed the importance of grievance procedures, but indicated that individual rights are not necessarily precluded. The court stated:

{¶ 43} "Sound labor policy disfavors an individualized right of action because it tends to vitiate the exclusivity of union representation, disrupt industrial harmony, and, in particular, impede the efforts of the employer and union to establish a uniform method for the orderly administration of employee grievances. * * * But while this policy may serve as a justification for permitting, or even presuming, the contractual subordination of individual employee rights under a collective bargaining agreement, it does not go so far as to require such a result. There is nothing in the national or state labor policy that precludes a collective bargaining agreement from giving the arbitral right to the aggrieved employee, rather than to his or her union. * * * Thus, the proposition that emerges from these cases is that an aggrieved worker whose employment is governed by a collective bargaining agreement that provides for binding arbitration will generally be deemed to have relinquished his or her right to act independently of the union in all matters related to or arising from the contract, except to the limited extent that the agreement explicitly provides to the contrary." (Citations omitted.) *Leon*, 100 Ohio St.3d 335, 2003-Ohio-6466, 800 N.E.2d 12, at ¶ 17.

{¶ 44} *Leon* is not precisely on point because it indicates merely that labor policy does not preclude aggrieved employees from being given independent rights under the collective-bargaining agreement. It does not address situations

in which, as here, the agreement fails to include particular groups within those who are required to submit to arbitration, without expressly specifying that they are not required to submit to arbitration. However, *Leon* provides guidance about the appropriate approach.

{¶ 45} We conclude that the grievance procedure does not apply to retirees because retirees are not specifically named in the CBA as persons who are entitled to bring grievances. This resolution is not particularly satisfactory, because one could argue that a union should be deemed to have committed an unfair labor practice if it fails to represent employees who were part of the bargaining unit at the time a collective agreement was made and whose rights under the agreement are thereafter violated. R.C. 4117.11(B)(6) indicates that an employee organization commits an unfair labor practice when it fails "to fairly represent all public employees in a bargaining unit." One could argue that fair representation requires processing of grievances having a reasonable basis that arise from the collective-bargaining agreement.

{¶ 46} As the trial court noted, any rights in this case necessarily arose from a collective-bargaining agreement negotiated while Carter and Toney were employees and should be enforced through the grievance procedures in the contract. Nonetheless, in light of the case law and the CBA's failure to include retirees within those persons expressly subject to arbitration, we conclude that Carter and Toney were not required by the terms of the CBA to exhaust the grievance procedure.

{¶ 47} Thus, we answer the question set forth in Carter and Toney's first statement of issues in the negative. This does not mean, however, that R.C. Chapter 4117 is inapplicable. The issue of SERB's exclusive jurisdiction does not depend on the existence or exhaustion of a grievance procedure.

## III

{¶ 48} Carter and Toney's second statement of issues is as follows:

{¶ 49} "Under Ohio law, are the breach of contract claims preempted by R.C. Chapter 4117 when Carter and Toney did not satisfy the statutory definition of 'public employees' at the time that their cause of action accrued?"

{¶ 50} Under this heading, Carter and Toney argue that they did not satisfy the statutory definition of "public employee" when their causes of action accrued. Accordingly, they contend that the trial court erred in concluding that R.C. Chapter 4117 preempts their claims.

{¶ 51} The Ohio Supreme Court has said that R.C. Chapter 4117 contains a "comprehensive framework for the resolution of public sector labor

disputes" and does not allow for a private right of action in the common pleas court. *Franklin Cty. Law Enforcement,* 59 Ohio St.3d at 169–170, 572 N.E.2d 87. SERB, therefore, has exclusive jurisdiction to decide matters committed to it under Chapter 4117. Id. at syllabus.

{¶ 52} R.C. 4117.01(C) defines a "public employee" as follows:

{¶ 53} "[A]ny person holding a position by appointment or employment in the service of a public employer, including any person working pursuant to a contract between a public employer and a private employer and over whom the national labor relations board has declined jurisdiction on the basis that the involved employees are employees of a public employer."

{¶ 54} Carter and Toney contend that they cannot be considered "public employees" because they were not "holding" their positions at the time their cause of action accrued. However, Carter and Toney do not cite authority supporting this assertion, other than the statute itself, and our research has not disclosed any cases that directly address whether retirees fall within the definition of public employees in R.C. 4117.01(C).·

{¶ 55} Unfortunately, R.C. Chapter 4117 is neither mentioned nor discussed in the public-sector cases that we have previously cited, which hold that retirees do not have to follow grievance procedures. See *Medley,* Scioto App. No. 96 CA 2426, 1996 WL 737587; *Independence Fire Fighters Assn.,* 121 Ohio App.3d 716, 700 N.E.2d 909; *Featherstone,* Franklin App. No. 98AP–889, 1999 WL 177561; *Yahraus,* Pickaway App. No. 01CA1, 2001 WL 884097; and *Marinelli,* Lake App. No. 2002–L–170, 2003-Ohio-6236, 2003 WL 22763441. Consequently, these cases offer no guidance.

{¶ 56} Research does disclose a public-sector case that applies R.C. Chapter 4117 to retirees. In *Gunn v. Euclid City School Dist. Bd. of Edn.* (1988), 51 Ohio App.3d 41, 554 N.E.2d 130, the Eighth District Court of Appeals considered whether the trial court had jurisdiction over the claims of several retired teachers who alleged, among other things, that the board had breached the collective-bargaining agreement by unilaterally adopting a resolution creating a new, more favorable incentive plan for prospective retirees. Id. at 41, 554 N.E.2d 130. The Eighth District noted, "A public employer's unilateral modification of the terms or conditions of employment may constitute a refusal to bargain collectively with the union." Id. at 44, 554 N.E.2d 130. Because the board's adoption of the resolution in question was "arguably a refusal to bargain," the Eighth District held that the trial court lacked jurisdiction over the teachers' claims. Id.

{¶ 57} The alleged breach in *Gunn* occurred after the teachers had retired and were no longer currently employed by the board. Thus, while the Eighth District did not directly address whether the retired teachers were "public

employees" under R.C. 4117.01(C), the Eighth District implicitly held that retirees are covered, by subjecting the retired teachers' claims to the requirements of R.C. Chapter 4117.

{¶ 58} In numerous cases, courts have held that SERB has exclusive original jurisdiction over the issue of whether a particular entity is a "public employer" or whether particular parties or groups are "public employees." See, e.g., *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 469, 613 N.E.2d 591 (SERB has exclusive original jurisdiction over whether historical society is a "public employer"); *Doctors' Professional Assn. v. State Emp. Relations Bd.*, Franklin App. No. 03AP–760, 2004-Ohio-5839, 2004 WL 2474422, at ¶ 15–28 (upholding SERB's determination that contract doctors are not public employees); *Ohio Civ. Serv. Emp. Assn., AFSCME Local 11, AFL–CIO v. State Emp. Relations Bd.* (2001), 144 Ohio App.3d 96, 104, 759 N.E.2d 794 (considering appeal of SERB's determination that attorneys employed by the Ohio Public Defender are not public employees); and *Hamilton v. State Emp. Relations Bd.* (1994), 70 Ohio St.3d 210, 212–213, 638 N.E.2d 522 (reinstating SERB decision that transit workers are public employees under R.C. 4711.01(C)).

{¶ 59} The Ohio Supreme Court also stressed in *Franklin Cty. Law Enforcement* that "[u]ltimately, the question of who is the 'public employer' must be determined under R.C. Chapter 4117." 59 Ohio St.3d at 170, 572 N.E.2d 87. The Ohio Supreme Court, therefore, concluded that SERB had exclusive jurisdiction over the case and that the trial court did not have jurisdiction. Id.

{¶ 60} In view of the above authority, we conclude that SERB has exclusive jurisdiction over the issue of whether Carter and Toney, as retirees, are "public employees" for purposes of R.C. 4117.01(C) and over the application of R.C. Chapter 4117. Accordingly, although Carter and Toney were not required to resort to the grievance procedure in the CBA, dismissal of their claims was proper because the trial court lacked subject-matter jurisdiction over this issue. SERB must first decide the matter, subject to later judicial review. See, e.g., *S. Community, Inc. v. State Emp. Relations Bd.* (1988), 38 Ohio St.3d 224, 527 N.E.2d 864, syllabus (outlining administrative remedy following SERB decision).

{¶ 61} SERB also has exclusive jurisdiction over the issue of whether the board may have committed an unfair labor practice by unilaterally refusing to comply with the CBA. In *Gunn*, 12 former teachers had left the school system pursuant to an early-retirement incentive. 51 Ohio App.3d at 41, 554 N.E.2d 130. The board of education subsequently adopted a resolution that created a new, more favorable incentive plan for prospective retirees. Id. The Eighth District Court of Appeals concluded that the trial court had lacked jurisdiction to hear the claims because the board's conduct arguably violated R.C. 4117.11(A)(1)and (5). Id. at 44, 554 N.E.2d 130. As was noted in *Gunn*, "[a] public employer's

unilateral modification of the terms or conditions of employment may constitute a refusal to bargain collectively with the union." Id.

{¶ 62} Subsequently, in *E. Cleveland v. E. Cleveland Firefighters Local 500, I.A.F.F.* (1994), 70 Ohio St.3d 125, 637 N.E.2d 878, the Ohio Supreme Court cautioned against applying the concept of an "arguable" unfair labor practice too broadly. Id. at 127–128, 637 N.E.2d 878. The Ohio Supreme Court agreed that SERB has exclusive jurisdiction over unfair-labor-practice claims. However, the court was concerned about possible evisceration of arbitration requirements under R.C. 4117.10(A), "since almost any conduct alleged in a grievance raised by aggrieved parties could arguably be categorized as an unfair labor practice." Id. at 128, 637 N.E.2d 878. The court stressed that "[t]he General Assembly's vesting of SERB with exclusive jurisdiction to determine unfair labor practices defined in R.C. 4117.11 was never meant to foreclose parties to a collective-bargaining agreement from settling differences in interpreting provisions of their agreement through the process of binding arbitration * * *." Id.

{¶ 63} These concerns would not apply in the present case because Carter and Toney, as retirees, are not required to exhaust the grievance procedures in the CBA.

{¶ 64} Furthermore, *E. Cleveland Firefighters Local 500* "must be considered and placed in perspective in light of its particular facts and in light of other cases concerning the scope of SERB's jurisdiction. In *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9,* * * * the Ohio Supreme Court held that SERB has exclusive jurisdiction over matters within R.C. Chapter 4117 in its entirety, not simply over unfair labor practices claims. That court also held that 'if a party asserts claims that arise from or depend on the collective bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive.' " *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland,* 156 Ohio App.3d 368, 2004-Ohio-994, 806 N.E.2d 170, at ¶ 12.

{¶ 65} Because the matters alleged in the present case arise from, or depend upon, the collective bargaining agreement, we conclude that SERB has exclusive jurisdiction over Carter and Toney's claims. The rights being asserted would not exist without the CBA and R.C. Chapter 4117. As we have noted in Part II, above, the grievance procedures in the CBA should logically apply to claims arising under that agreement. That is not the situation in this case, due to contractual language and existing case law. However, to also conclude that R.C. Chapter 4117 does not apply would contradict the wording and policy expressed in R.C. Chapter 4117. For example, R.C. 4117.08(A) states:

{¶ 66} "All matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing

provision of a collective bargaining agreement are subject to collective bargaining between the public employer and the exclusive representative, except as otherwise specified in this section and division (E) of section 4117.03 of the Revised Code."[1]  See also, e.g., *State ex rel. Fraternal Order of Police, Ohio Labor Council, Inc. v. Franklin Cty. Court of Common Pleas* (1996), 76 Ohio St.3d 287, 290, 667 N.E.2d 929 ("[a]ny claim which is independent of R.C. Chapter 4117, such as a breach of contract or enforcement, still falls solely within the jurisdiction of SERB if the asserted claim arises from or is dependent on the collective bargaining rights created by R.C. Chapter 4117").

{¶ 67} The case that the Ohio Supreme Court relied on for the above quotation about SERB's exclusive jurisdiction is *State ex rel. Cleveland City School Dist. Bd. of Edn. v. Pokorny* (1995), 105 Ohio App.3d 108, 110, 663 N.E.2d 719.  In *Pokorny,* the plaintiff was awarded assault-leave benefits in 1991, but the benefits were later suspended due to a subsequent collective-bargaining agreement that established a time limitation for receipt of assault-leave benefits.  Id.  The plaintiff then filed a complaint in common pleas court to enforce the prior determination of benefits.  Id.

{¶ 68} The Eighth District Court of Appeals granted a writ to prevent the trial court from asserting jurisdiction in the case, noting:

{¶ 69} "Taylor's [the plaintiff's] claim for continued payment of assault leave benefits clearly involves issues that are preempted by the Ohio Collective Bargaining Act and the grievance procedure as contained in the current collective bargaining agreement.  * * * In addition, issues such as an unfair labor practice or a breach of duty of fair representation fall solely within the jurisdiction of the State Employment Relations Board ('SERB').  * * * It must also be noted that any claim which is independent of R.C. Chapter 4117, such as a breach of contract or enforcement, still falls solely within the jurisdiction of SERB if the asserted claim arises from or is dependent on the collective bargaining rights created by R.C. Chapter 4117.  * * * Finally, Taylor has failed to exhaust her available administrative remedies prior to the filing of a complaint within the Cuyahoga County Court of Common Pleas.  * * *

{¶ 70} "In the case sub judice, the respondent is without jurisdiction to address the issues as raised in the complaint that was filed by Taylor.  This lack of jurisdiction is 'patent and unambiguous.'  The ability of Taylor to receive assault leave benefits is related directly to the past and present collective bargaining agreements and as such must be addressed through the remedies provided by

---

**1.**  These excepted matters involve certain inherent managerial policy and best-health-care practices as determined by the school employees' health care board.  R.C. 4117.08(C)(1) through (9) and R.C. 4117.03(E).  None of these matters are involved in the present case.

R.C. Chapter 4117. These remedies include, inter alia, arbitration, the grievance procedures as provided by the collective bargaining agreement, and a complaint filed with SERB. As a result, each of the three prerequisites necessary for the granting of a writ of prohibition is present. Initially, the respondent is about to exercise judicial power through a trial. The second prerequisite, a lack of jurisdiction, is also satisfied. The third prerequisite is satisfied since a patent and unambiguous lack of jurisdiction renders the availability of an appeal irrelevant." (Citations omitted.) Id. at 110–111, 663 N.E.2d 719.

{¶ 71} We see no logical distinction between the situation in *Pokorny* and that of the present case, other than the fact that Carter and Toney were not required to file grievances. But the nonrequirement of grievances does not impact the issue of SERB's exclusive jurisdiction.

{¶ 72} Accordingly, we answer the question posed in Carter and Toney's second statement of the issues in the affirmative. Because the trial court correctly found that SERB has exclusive jurisdiction over this matter, the judgment of the trial court dismissing this cause of action for lack of subject-matter jurisdiction will be affirmed.

## IV

{¶ 73} Carter's and Toney's third and fourth statements of issues are as follows:

{¶ 74} "Under the applicable procedural standards, did the trial court err in construing the statutory and contractual language in favor of the movant, defendant-appellee Trotwood–Madison Board of Education (hereinafter 'board of education'), and against the non-movants, Carter and Toney?"

{¶ 75} "Under the applicable procedural standards, did the trial court err in rejecting a reasonable interpretation of the statutory and contractual language that was favorable to nonmovants Carter and Toney?"

{¶ 76} The statements of issues quoted above do not generally correspond to the discussion in Carter and Toney's brief. As a result, it is somewhat difficult to separate and decipher the arguments being made under each heading. The third statement of issues appears to relate to the trial court's decision to dismiss the action for failure to exhaust the grievance procedures in the contract. Because we have already held that the trial court erred in this regard, the issue raised under this heading is moot and need not be further addressed.

{¶ 77} The fourth statement of issues appears to relate to the dismissal of the case based on SERB's exclusive jurisdiction under R.C. Chapter 4117. Carter and Toney appear to contend that the trial court improperly construed the statutory language in favor of the board, in order to find that Carter and Toney

were public employees under R.C. 4117.01(C). Again, this point has been considered in our discussion of the second statement of issues. As we noted, SERB is responsible for deciding, in the first instance, whether retirees such as Carter and Toney should be considered public employees. In addition, SERB has exclusive jurisdiction over the case, because the claims in question arise from the CBA. Accordingly, the issue raised under this heading is also moot.

V

{¶ 78} In view of the preceding discussion, the sole assignment of error is overruled. Because the trial court correctly dismissed the action for lack of subject-matter jurisdiction, as a result of SERB's exclusive jurisdiction, the judgment of the trial court is affirmed.

Judgment affirmed.

BROGAN and GRADY, JJ., concur.